IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTHONY MAYS, Individually and on behalf of a class of similarly situated persons; and JUDIA JACKSON, as next friend of KENNETH FOSTER, Individually and on behalf of a class of similarly situated persons,<br><br>Plaintiffs-Petitioners,<br><br>v.<br><br>THOMAS DART, Sheriff of Cook County,<br><br>Defendant-Respondent. | Case No. 20-cv-2134 |

**PLAINTIFFS' MOTION AND MEMORANDUM
IN SUPPORT OF CLASS CERTIFICATION**

Plaintiff-Petitioner Anthony Mays and Plaintiff-Petitioner Judia Jackson, as the next friend of Kenneth Foster, on behalf of themselves and the classes they seek to represent, hereby respectfully request that this Court grant their motion for class certification, appoint them as named plaintiffs in this litigation, and appoint their undersigned attorneys as class counsel.

**INTRODUCTION**

The spread of COVID-19 throughout the world has created an unprecedented health crisis. Public health officials throughout the country have implored the general public to exercise social distancing and improved hygiene practices in an effort to curb the threat of the deadly virus. But people in Defendant Sheriff Tom Dart's custody cannot distance themselves from others and they cannot exercise improved hygiene. COVID-19 has already infected people in Dart's custody. Dart has failed to take reasonable measures to stop the spread of COVID-19. And every single person in his custody faces a risk of death or serious harm as a result.

**CLASS DEFINITION**

This federal class action seeks to require Dart to implement procedures that provide reasonable medical care for Plaintiffs and keep them reasonably safe from contracting communicable disease while in custody. But some people are so vulnerable to COVID-19 that no procedures could be implemented fast enough to protect them; these people must be released immediately, and they seek a writ of habeas corpus ordering just that. At the same time, some people are being housed in units with known exposure to the coronavirus; these people are entitled to be transferred to a unit without such exposure.

Plaintiffs, therefore, seek to certify one class with two subclasses as follows:

- The Whole Class is defined as "all people detained in the Cook County jail who are not detained pursuant to a judgment of conviction."

- Subclass A is defined as "People in custody who have vulnerabilities that place them in heightened risk of contracting serious COVID 19, including persons over the age of 65 and persons with underlying medical conditions that put them at particular risk of serious harm or death from COVID-19, including but not limited to people with respiratory conditions including chronic lung disease or moderate to severe asthma; people with heart disease or other heart conditions; people who are immunocompromised as a result of cancer, HIV/AIDS, or any other condition or related to treatment for a medical condition; people with chronic liver or kidney disease or renal failure (including hepatitis and dialysis patients); people with diabetes, epilepsy, hypertension, blood disorders (including sickle cell disease), inherited metabolic disorders; people who have had or are at risk of stroke; and people with any other condition specifically identified by CDC

either now or in the future as being a particular risk for severe illness and/or death caused by COVID-19"

- Subclass B is defined as "all Class members who are currently being housed on a tier where a person with a diagnosed case of COVID-19 is or has been housed."

## BACKGROUND AND SUMMARY OF ARGUMENT

Plaintiffs' suit for injunctive relief under the Fourteenth Amendment, and Subclass A's petition for habeas corpus, arise from Dart's failure to protect them from the severe risk of death or serious physical harm. Those risks effect each Class and Subclass member identically. This Court should, therefore, certify the Class and Subclasses.

The claims of the class and subclasses are ideally suited to proceed as a class action under Federal Rule of Civil Procedure 23(b)(2) and as an analogous class habeas proceeding under *Bijeol v. Benson*, 513 F.2d 965, 968 (7th Cir. 1975), in which the Seventh Circuit held that "a representative procedure analogous to the class action provided for in Rule 23 may be appropriate in a habeas corpus action under some circumstances."[1] This is so because (a) every member of the class and subclasses have the same legal theory as to why their federal rights are being violated; (b) Dart's failure to take reasonable measures to protect them violates the rights of every Class member; (c) every Class member will use similar or overlapping evidence in support of his or her cause of action; and (d) every member of the class seeks a uniform injunction or writ of habeas corpus requiring Dart to take immediate to protect them from a grave risk of death or harm. In other words, each representative shares all legal claims with the Class or

---

[1] Although the Supreme Court has not squarely decided whether Rule 23 of the Federal Rules of Civil Procedure "is applicable to petitions for habeas corpus relief," on several occasions the Court has decided class action habeas petitions. *Schall v. Martin*, 467 U.S. 253, 261 n.3 & 10 (1984) (declining to address the issue and accepting district court's certification of the class; reversing lower courts' holding that preventive detention of juveniles was unconstitutional); *Middendorf v. Henry*, 425 U.S. 25, 30 (1976) (declining to decide whether class action habeas petitions are cognizable; refusing to grant relief).

3

Subclass she seeks to represent, each Class or Subclass's evidence will be identical in support of those claims, and the Class representatives seek the same relief as the Class or Subclass they seek to represent.

In addition to commonality, the class and subclasses easily satisfy the other requirements of Rule 23(a), as well as the requirements of Rule 23(b)(2). (The requirements for a class habeas proceeding are materially identical. *Bijeol*, 513 F.2d at 968. Joinder is impracticable because the number of people in Dart's custody exceeds 5,000 on any given day, and each Subclass contains hundreds, and sometimes thousands, of people.

The claims of the named Plaintiffs are typical of those of the class as a whole. As the supporting declarations to the Complaint make clear, *see* Complaint, ECF 1, at 17-19, that typicality stems from their claim that Dart has placed them at significant risk of harm by failing to take appropriate steps to address the high and significant risk of COVID-19 throughout the jail.

Named Plaintiffs have no conflicts with the unnamed members of the proposed class. Their lawyers are experienced in federal-court civil-rights class actions, particularly those involving prisons and jails. Thus, named Plaintiffs and their counsel will adequately represent the interests of the proposed class.

Finally, Dart has refused to act in a manner that applies generally to the class as a whole, rendering class-wide injunctive relief appropriate under Federal Rule of Civil Procedure 23(b)(2), and a classwide writ of habeas corpus appropriate under *Bijeol*, 513 F.2d at 968.

## ARGUMENT

For a district court to certify a class action, the proposed class must satisfy the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a) and at least one

requirement of Rule 23(b).[2] *Rosario v. Livaditis*, 963 F.2d 1013, 1017 (7th Cir. 1992). Because the proposed Class and Subclasses meet all four Rule 23(a) requirements and the requirements of Rule 23(b)(2), this Court should certify Plaintiffs' proposed Class. Rule 23(c)(5) further allows for a class to be divided into subclasses, where the subclasses are treated as a class under Rule 23. *See Johnson v. Meriter Health Servs. Emp. Ret. Plan*, 702 F.3d 364, 368 (7th Cir. 2012). As demonstrated below, each subclass additionally meets all requirements of Rule 23(a) and Rule 23(b) and this Court should similarly certify each of Plaintiffs' proposed subclasses.

**I.     Plaintiffs Satisfy Rule 23(a): They Are Numerous and Raise Common Questions, and the Named Plaintiffs Are Adequate Representatives With Typical Claims.**

    **A.     Numerosity is Satisfied: The Class and Subclasses Each Include Hundreds if Not Thousands of Members.**

Federal Rule of Civil Procedure 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[A] class including more than 40 members is generally believed to be sufficient." *Barragan v. Evanger's Dog & Cat Food Co.*, 259 F.R.D. 330, 333 (N.D. Ill. 2009); *Streeter v. Sheriff of Cook Cty.*, 256 F.R.D. 609, 612 (N.D. Ill. 2012) (same); *accord* William B. Rubenstein, et al., Newberg on Class Actions, § 3:12 (5th ed. 2011) ("[A] class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone"). Numerosity is easily satisfied here. Dart is currently holding approximately 4,770 people in his custody. The threat posed by COVID-19 is such that every person in Dart's custody faces the risk of significant harm. Everyone is at risk of transmission of COVID-19. There is no available vaccine to protect against infection from COVID-19 and no medications approved to treat it. People in congregate environments such as jails, which are

---

[2] Because the requirements are materially identical in this context, Plaintiffs refer to Rule 23 as the governing standard. *See Kazarov v. Achim*, No. 02 C 5097, 2003 WL 22956006, at *3 (N.D. Ill. Dec. 12, 2003) (analyzing petition for representative habeas action by determining whether the "Federal Rule of Civil Procedure 23 factors are met and that a representative action is appropriate").

places where people live, eat, and sleep in close proximity, face increased danger of contracting COVID-19, as already evidenced by the rapid spread of the virus in cruise ships and nursing homes. The CDC also warns of "community spread" where the virus spreads easily and sustainably within a community where the source of the infection is unknown.

The proposed subclasses also easily meet the numerosity threshold. Subclass A is comprised of people who are medically vulnerable to COVID-19 because of underlying medical conditions—including people who live with diabetes and asthma, among other conditions. People of any age who suffer from certain underlying medical conditions, including lung disease, heart disease, chronic liver or kidney disease (including hepatitis and dialysis patients), diabetes, epilepsy, hypertension, compromised immune systems (such as from cancer, HIV, or autoimmune disease), blood disorder (including sickle cell disease), inherited metabolic disorders, stroke, developmental delay, and asthma, are at elevated risk as well. The WHO-China Joint Mission Report indicates that the mortality rate from COVID-19 for those with cardiovascular disease was 13.2%, 9.2% for diabetes, 8.4% for hypertension, 8.0% for chronic respiratory disease, and 7.6% for cancer.[3]

According to one study, "asthma prevalence is 30%–60% higher among individuals with a history of incarceration as compared with the general population."[4] One study estimates that up to 15% of people who are in custody have asthma, 10% of people in custody live with a heart condition that requires medical care, 10% live with diabetes, and 30% have hypertension.[5] Based

---

[3] Report of the WHO-China Joint Mission on Coronavirus Disease 2019 (COVID-19), World Health Organization (Feb. 28, 2020), at 12, *available at* https://www.who.int/docs/default-source/coronaviruse/who-china-joint-mission-on-covid-19-final-report.pdf (last visited Apr. 1, 2020).
[4] Elizabth M. Vigilanto et al., *Mass Incarceration and Pulmonary Health: Guidance for Clinicians*, 15 Ann. Am. Thoracic Soc. 409, 409 (2019).
[5] Laura M. Marushack et al., *Medical Problems of State and Federal Prisoners and Jail Inmates, 2011-12*, U.S. Dept. of Justice (2014).

on these estimates and assuming some overlap in these diagnoses, a fair estimate of the number of people who live with one or more of these medical vulnerabilities exceeds one thousand.

Subclass B is defined as all people who are housed on a tier that is or has been exposed to someone with a known coronavirus diagnosis. At the time of the filing of this Motion, at least 164 detainees and 46 staff members has tested positive for coronavirus. This almost certainly underestimates the number of actual cases by a factor of three or four, as explained in the contemporaneously filed Complaint and Motion for a Preliminary Injunction. But even if it did not, large swaths of the jail have already been exposed to the virus, and must be thoroughly deep cleaned in order to be safe for human habitation. Hundreds of people, if not thousands, are currently confined in these swaths of the jail.

The class and subclasses are too numerous for joinder to be considered practicable.

**B.      Commonality is Satisfied: The Legality of Dart's Response to the Pandemic Involves Numerous Common Questions of Fact and Law.**

Rule 23(a)(2) requires that "there [be] questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "A common nucleus of operative fact is usually enough to satisfy the commonality requirement." *Rosario*, 963 F.2d at 1018; *Streeter*, 256 F.R.D. at 612 (same). "Rule 23 must be liberally interpreted" and should be read to favor maintenance of class actions, *King v. Kan. City S. Indus.*, 519 F.2d 20, 25-26 (7th Cir. 1975); *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992) ("[T]he commonality requirement has been characterized as a 'low hurdle' easily surmounted.").

Plaintiffs must demonstrate that there is "some glue" holding the claims together; the class claims "must depend upon a common contention" that is "of such a nature that it is capable of classwide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). ("What matters to class certification . . . is not the raising of common questions . . . but, rather the

capacity of a classwide proceeding to generate common answers . . .") (citations and quotations omitted; emphasis and first ellipsis in original). In many post-*Walmart* cases, district courts have found that systemic constitutional challenges to prison and jail conditions provide the "glue" necessary to hold a class together. *E.g., Olson v. Brown*, 284 F.R.D. 398, 410-11 (N.D. Ind. 2012) (jail policies and conditions); *Ross v. Gossett*, 2020 WL 1472072, at *3-4 (S.D. Ill. Mar. 26, 2020) (unconstitutional practices regarding shakedowns); *Rosas v. Baca*, 2012 WL 2061694, at *3 (C.D. Cal. June 7, 2012) (jail violence case); *Jones v. Guzman*, 296 F.R.D. 416, 465-66 (E.D. La. 2013) (jail violence case); *Hughes v. Judd*, 2013 WL 1821077, at *23 (M.D. Fla. Mar. 27, 2013) (unconstitutional conditions for juvenile detainees); *M.D. v. Perry*, 294 F.R.D. 7, 35 (S.D. Tex. 2013) (foster children facing abuse); *Parsons v. Ryan*, 289 F.R.D. 513, 516-23 (D. Ariz. 2013) (inadequate medical and mental health care in state prisons); *Butler v. Suffolk Cnty.*, 289 F.R.D. 80, 98 (E.D.N.Y. 2013) (jail sanitation case); *Abadia-Piexoto v. United States Dep't of Homeland Sec.*, 277 F.R.D. 572, 577 (N.D. Cal. 2011) (shackling of detainees during judicial proceedings).

As the Supreme Court explained in *Wal-Mart*, "for purposes of Rule 23(a)(2) [e]ven a single [common] question will do . . ." 564 U.S. at 359 (citation and internal quotations omitted; alterations in original). Here, Plaintiffs allege that all members of the proposed Class are at significant risk of contracting a fatal illness due to Dart's systemic failure to implement policies and practices necessary to protect them. The questions of law and fact common to the class and each subclass are the following:

(1) Does COVID-19 present a substantial risk of harm to people in Dart's custody?

(2) Does COVID-19 present a risk of harm so severe to some people that the only Constitutionally permissible way to protect them is to release them from custody immediately?

(3) Do people detained in areas known to be exposed to a deadly pathogen have a right to be transferred to another place that is not so exposed?

Resolving these questions will yield exactly the kind of "common answer" to Plaintiffs' Eighth and Fourteenth Amendment claims that the Supreme Court requires. See *Wal-Mart*, 564 U.S. at 351.

An injunctive challenge to a systemic failure to protect class members from significant harm is a textbook example of a case that satisfies the commonality requirement and warrants class certification. Indeed, "[a] class action is . . . an appropriate vehicle to address what is alleged to be a systemic problem." *Coleman v. County of Kane*, 196 F.R.D. 505, 507 (N.D. Ill. 2000) (finding commonality in case against sheriff regarding bond fees). Plaintiffs here challenge Dart's systemic failure to respond reasonably to the deadly threat of COVID-19. The commonality requirement is therefore easily met. S*ee Corey H. v. Bd. of Educ. of City of Chi.*, 2012 WL 2953217, at *7 (N.D. Ill. Jul. 19, 2012) ("Plaintiffs have attacked . . . systemic failures and district-wide policies that apply to every member of the certified class.").

### C. Typicality is Satisfied: The Named Plaintiffs' Claims are Representative of Those of the Class at Large.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The standard for determining typicality is not an identity of interest between the named plaintiffs and the class, but rather a "sufficient homogeneity of interest." *See, e.g.*, *Jones v. Blinziner*, 536 F. Supp. 1181, 1190 (N.D.

Ind. 1982) (citing *Sosna v. Iowa*, 419 U.S. 393, 403 n.13 (1975)). "[T]he typicality requirement is liberally construed." *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 57 (N.D. Ill. 1996).

In this case, the claims of the Plaintiffs are typical of the Class and of each Subclasses that they represent. *See Fonder v. Sheriff of Kankakee County,* 2013 WL 5644754, at *6 (C.D. Ill. Oct. 15, 2013) (typicality satisfied where "Plaintiff is challenging the same strip search policy as the class he seeks to represent"); *Olson*, 284 F.R.D. at 411 (typicality satisfied where class representative and members of proposed class had legal mail opened improperly by correctional officers); *Inmates of Attica Corr. Facility v. Rockefeller*, 453 F.2d 12, 24-25 (2d Cir. 1971) (finding typicality in lawsuit challenging excessive force by guards, despite individual factual differences); *Ingles v. City of New York*, 2003 WL 402565, at *5 (S.D.N.Y. Feb. 20, 2003) (same); *Anderson v. Garner*, 22 F. Supp. 2d 1379, 1385 (N.D. Ga. 1997) (finding typicality in prison excessive force case even though "when compared to the Plaintiffs' claims, the unnamed class members may have suffered different injuries under different circumstances"). Every member of the class faces a substantial risk of contracting COVID-19 if immediate measures are not implement. Some people, like the medically vulnerable members of Subclass A, are at imminent risk of death or severe harm if they are not released.

Of course "[t]ypical does not mean identical." *Gaspar*, 167 F.R.D. at 57; *see also De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) ("The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members."), *overruled on other grounds*, *Green v. Mansour*, 474 U.S. 64 (1985); *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009) (same). Thus, the typicality requirement is satisfied when the representative's injuries arise from the same practice affecting the rest of the class, even if factual differences exist. *Streeter*, 256 F.R.D.

10

at 612-13 (certifying class of detainees strip searched upon entry to Cook County Jail, despite the Sheriff's argument that there were differences in the circumstances of each search "because the likelihood of some range of variation in how different groups of . . . detainees were treated does not undermine the fact that the claims of each class [member] share a common factual basis and legal theory." (internal quotation marks omitted)); *Areola v. Godinez*, 546 F.3d 788, 798 (7th Cir. 2008) (typicality satisfied where plaintiff was in the "same boat" as other Cook County Jail detainees who had been denied crutches); *Parish v. Sheriff of Cook County*, 2008 WL 4812875, at *4 (N.D. Ill. Oct. 24, 2008) (certifying class of Cook County Jail detainees who were denied adequate medical care and rejecting the Sheriff's argument that commonality did not exist because "the named plaintiffs' claims vary as to the type of illness complained of and the type of medication at issue"); *Bullock v. Sheahan*, 225 F.R.D. 227, 230 (N.D. Ill. 2004) ("[p]otential factual differences" relating to individual searches held insufficient to defeat typicality in a jail strip search case).

The overarching nature of the threat of COVID-19 to every person confined in Dart's custody is sufficient to satisfy typicality. For Subclass A, each person claims that she must be released because her health is at imminent and immediate risk from the same virus and same policy failures as each other person in Subclass A. And for Subclass B, each person claims an identical potential exposure to an identical pathogen and seeks identical relief. Both Plaintiffs allege that they are (a) in the jail, (b) medically vulnerable, and (c) housed on a tier where another detainee has tested positive for coronavirus. These mirror the allegations of the many declarants, both those in and recently released from the Jail, who have and are suffering the same harms as the Class Representatives—exposure to COVID-19 positive or symptomatic detainees, lack of cleaning supplies and sanitizing agents, lack of personal protective equipment (PPE),

11

inability to engage in social distancing or indeed *any* distancing in dorm and double-celling living quarters with shared shower and bathroom areas, a lack of adequate medical care including for detainees with symptoms of COVID-19, and a lack of clean shared living spaces. In this way, the claims of the Class Representatives are typical of the claims of those they seek to represent. *See* Complaint, ECF 1, at 17-19.

### D. The Named Plaintiffs Will Fairly and Adequately Protect the Interests of the Class and Subclasses.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "This adequate representation inquiry consists of two parts: (1) the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests, and (2) the adequacy of the proposed class counsel." *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011). All Plaintiffs here are represented by counsel experienced in the protection and enforcement of constitutional and statutory rights. Plaintiffs each have a strong personal stake in the proceedings that will "insure diligent and thorough prosecution of the litigation." *Rodriguez v. Swank*, 318 F. Supp. 289, 294 (N.D. Ill. 1970), *aff'd*, 403 U.S. 901 (1971).

#### 1. Absence of Conflict within the Class

The two Named Plaintiffs in this case are set forth below:

- Plaintiff-Petitioner Anthony Mays is a detainee in Cook County Jail. He has diabetes and had been referred for an evaluation of a heart condition when COVID-19 hit the jail. He is housed in Division 8, in an open-dormitory setting. Multiple detainees on his tier have been removed after testing positive for COVID-19.

- Plaintiff-Petitioner Kenneth Foster is a detainee at Cook County Jail. This action is brought on Mr. Foster's behalf by his next friend, Judia Jackson. Ms. Jackson is aware of

12

Mr. Foster's wishes with respect to this action. Ms. Jackson is serving as next friend because the undersigned counsel attempted to contact Mr. Foster by telephone within the Cook County Jail, but were unable to do so due to the Jail's operational difficulties arising out of the COVID-19 pandemic. *See* Declaration of Alison Horn (Ex. A). Mr. Foster has stomach cancer, Lung-Sarcoidosis, high blood pressure, asthma, and bronchitis. He is living in a dorm setting in Division 2. Mr. Foster estimates that five or six people from his tier have tested positive for COVID-19. The people who tested positive for the virus were removed from the dorm.

Named Plaintiffs have no known conflicts with other class members and they are willing and able to serve as named Plaintiffs in this Action.

### 2. Adequacy of Representation

Plaintiffs' counsel are eminently qualified, experienced in conducting federal class action litigation, and have adequate resources to undertake the proposed litigation to its resolution. Plaintiffs are represented by attorneys from Loevy & Loevy, the Roderick and Solange MacArthur Justice Center, and Civil Rights Corps. Counsel's qualifications are more explicitly set forth in the attached declarations. *See* Declaration of Stephen Weil (Ex. B), Declaration of Alexa A. Van Brunt (Ex. C), Declaration of Locke E. Bowman (Ex. D), Declaration of Charles Gerstein (Ex. E).

**II.    Plaintiffs Satisfy Fed. R. Civ. P. 23(b)(2): This Case Seeks an Injunction Against and Writ of Habeas Corpus Seeking Relief From Conditions that Place the Entire Proposed Class at Risk of Serious Illness and Death.**

The final requirement for class certification is satisfaction of at least one of the subsections of Rule 23(b). Subsection (b)(2) requires that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate

final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). Courts have repeatedly held that civil-rights class actions are the paradigmatic 23(b)(2) suits, "for they seek classwide structural relief that would clearly redound equally to the benefit of each class member." *Marcera v. Chinlund*, 595 F.2d 1231, 1240 (2d Cir. 1979), *vacated on other grounds*, 442 U.S. 915 (1979); *see also Johnson v. General Motors Corp.*, 598 F.2d 432, 435 (5th Cir. 1979). As stated in the leading treatise on class actions:

> Rule 23(b)(2) was drafted specifically to facilitate relief in civil rights suits. Most class actions in the constitutional and civil rights areas seek primarily declaratory and injunctive relief on behalf of the class and therefore readily satisfy Rule 23(b)(2) class action criteria.

A. Conte & H. Newberg, Newberg on Class Actions § 25.20 (4th ed. 2002). In addition, the Seventh Circuit has recognized that prisoners, because of many factors "may not . . . [be] in a position to seek . . . [relief] on their own behalf," and that this fact militates in favor of class certification. *United States ex rel. Morgan v. Sielaff*, 546 F.2d 218, 222 (7th Cir. 1976).

Injunctive challenges to prison and jail conditions routinely proceed as class actions. *See, e.g., Brown v. Plata*, 563 U.S. 493, 506 (2011); *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 374 (1992); *Jones 'El v. Berge*, 374 F.3d 541 (7th Cir. 2004); *Bruscino v. Carlson*, 854 F.2d 162, 164 (7th Cir. 1988); *Hadi v. Horn*, 830 F.2d 779, 781 (7th Cir. 1987); *French v. Owens*, 777 F.2d 1250, 1251 (7th Cir. 1985); *Jones v. Diamond*, 519 F.2d 1090, 1097 (5th Cir. 1975) ("Realistically, class actions are the only practicable judicial mechanism for the cleansing reformation and purification of these penal institutions."); *Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994) (noting that subsection (b)(2) "is almost automatically satisfied in actions primarily seeking injunctive relief"); *Bradley v. Harrelson*, 151 F.R.D. 422, 427 (M.D. Ala. 1993) (stating that subsection (b)(2) "is particularly applicable to suits such as the one *sub judice* which involve conditions of confinement in a correctional institution"). Here, the practice of high-level officials

14

failing to take reasonable measures to abate the deadly threat posed by COVID-19 places all class members at risk of serious illness or death. Rule 23(b)(2) is accordingly satisfied.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court the certify the Class and Subclasses as defined in this Motion.

Respectfully submitted,

/s/ Alexa Van Brunt
Counsel for Plaintiffs

Stephen H. Weil
Sarah Grady
Loevy & Loevy
311 N. Aberdeen
Chicago, IL 60607
Tel: 312-243-5900

Locke E. Bowman
Alexa A. Van Brunt
Roderick and Solange MacArthur Justice Center
Northwestern Pritzker School of Law
375 E. Chicago Avenue, Chicago, IL 60611
(312) 503-0884

Charles Gerstein (*pro hac vice* application forthcoming)
Alec Karakatsanis (*pro hac vice* application forthcoming)
Civil Rights Corps
1601 Connecticut Ave NW, Suite 800
Washington, DC 20009
202-894-6128

## **CERTIFICATE OF EMERGENCY SERVICE**

I, Alexa Van Brunt, an attorney, hereby certify that on April 3, 2020, I caused a copy of the foregoing to be filed using the Court's CM/ECF system. I further certify that I, or another one of Plaintiffs' attorneys, will promptly serve a copy of the same on General Counsel for the Cook County Sheriff's Office, as well as the Division Chief and Supervisor of the Special Litigation Section, and the Division Chief of the Complex Litigation Division, of the Cook County State's Attorney's Office via email.

/s/ Alexa A. Van Brunt
Alexa A. Van Brunt