# EXHIBIT A

**Affidavit of Charlie McKeown on Behalf of Dominik Baster**

My name is Charlie McKeown. I am a volunteer investigator at the Chicago Community Bond Fund, assisting Plaintiffs' counsel in *Mays v. Dart*. On April 8, I spoke with Dominik Baster, a detainee in the Cook County Jail, who provided me with the following information:

1. Mr. Baster is 34 years old. He has been charged with aggravated driving under the influence, and has been incarcerated in Cook County Jail Division 8, tier 3H, dorm 2, since January 11, 2020.

2. Mr. Baster is being detained on a $5,000-D bond that he cannot afford to pay. This bond was set in January after Mr. Baster missed a court date, due to being hospitalized.

3. Mr. Baster has cirrhosis of the liver, which is what led to his hospitalization.

4. Mr. Baster was supposed to return to the hospital, but the jail has denied him medical treatment. He has not seen a doctor in over two months, despite the fact that he is currently experiencing severe symptoms of cirrhosis, including blood in his urine.

5. He also has been prescribed medications for both cirrhosis and high blood pressure, and his doctors tell him he needs to drink 3-4 bottles of Ensure each day. However, the jail has not consistently provided his medications or Ensure. He will often go 2-3 days without his liver medication, and he has not been given enough Ensure.

6. Mr. Baster has heard that his dorm is under quarantine; however, people are still coming in and out. Three people in Mr. Baster's dorm have died from COVID-19, and others are visibly ill.

7. In addition to the lack of medical treatment he has personally experienced, Mr. Baster has witnessed failure to care for others who have symptoms of COVID-19. One such person was William Sobczyk, who later died. For approximately one month prior to his hospitalization and death, Mr. Sobczyk was vomiting, falling off of his bed, and repeatedly requesting medical attention that he did not receive. To Mr. Baster's knowledge, Mr. Sobczyk was able to see a doctor on only one occasion, where a doctor merely looked in at him from outside the room, despite the fact that Mr. Sobczy was on the floor and unable to get back into bed on his own.

8. Social distancing is not possible in Mr. Baster's dorm. He is housed with approximately 39 other people in one room, with beds less than 4 feet apart.

9. The shared bathrooms are extremely dirty, and the handicap bathroom is not working. There is mold growing in places. They do not have cleaning supplies.

10. Mr. Baster's dorm was provided with masks after *Mays v. Dart* was filed; however, they are being told  by medical workers and jail staff not to worry about masks and gloves, because they probably already have the virus. As a result, some people in Mr. Baster's dorm are not wearing the masks.

I declare under penalty of perjury that the foregoing is true and correct.

April 2, 2020                                    /s/Charlie McKeown
Chicago, IL                                     Charlie McKeown

**Affidavit of Brendan Mohr on behalf of Renaldo Almond**

My name is Brendan Mohr. I am a volunteer investigator at the Chicago Community Bond Fund, assisting Plaintiffs' counsel in *Mays v. Dart*. On May 11,  I spoke with Renaldo Almond, a detainee in Cook County Jail, who provided me with the following information:

1. Mr. Almond is 35 years old. He currently resides in Division 2 (DIV2-D4-ML-27) of Cook County Jail. Mr. Almond paid his bond on April 29, 2020 and was cleared for release on Electronic Monitoring. He changed into his regular street clothes but was then processed back in. He has yet to speak with a Social Worker and every White Shirt tells him that "it is not their job to deal with that sort of thing." He is still being held in Cook County Jail. He was booked into the jail on November 1, 2019.

2. Mr. Almond has epilepsy and experiences seizures. Because of his seizures he has a permit to sleep on the bottom bunk of bunk beds. He also has an irregular heartbeat.

3. Mr. Almond is currently in Division 2-D4 with approximately 100 other people, prior to that he was housed in Division 2-D2. He says they were moved because the area they were in before was condemned. Up until March he was in a room with approximately 500 people.

4. The bunks that they are sleeping on are one to two feet away from the other. There are three showers and five working toilets for 100 people. Mr. Almond says it can get crowded when there are a lot of people trying to shower in the mornings.

5. Social distancing is not possible when eating or receiving commissary because they all get into a line and then sit at tables very close to each other.

6. Mr. Almond says they are not receiving soap as often as they should. He has not received his in over a week and a half. People are using the soap they receive to wash their hands and clothes/sheets because laundry doesn't come around regularly. If they run out of soap, they would have to purchase extra from commissary.

7. Mr. Almond says that they did have access to hand sanitizer at one point but the officers put it in their office for their own use and have not been giving it to them as often.

8. Mr. Almond says that the jail provides them with masks 4 days out of the week, but not every single day.

9. Mr. Almond says that jail staff are often not wearing personal protective equipment even after coming from Cermak Hospital.

10. Mr. Almond says that it is like a "revolving door" of people leaving and coming back to the deck. He says people start showing symptoms and get taken to Cermak but a couple

of days later, they will be back on the deck. The people he spoke to that were taken to Cermak Hospital, many of them said they never got tested for COVID-19.

11. Mr. Almond says three weeks ago, medical staff stopped taking their temperatures and vitals everyday. He has never been tested for COVID-19.

I am providing this hearsay declaration because of restrictions on visitors and contact with detainees in the Cook County Jail. I declare under penalty of perjury that the foregoing is true and correct.

May 11, 2020                          /s/ Brendan Mohr
Chicago, Illinois                     Brendan Mohr

**Affidavit of Charlie McKeown on Behalf of Thomas Budasz**

My name is Charlie McKeown. I am a volunteer investigator at the Chicago Community Bond Fund, assisting Plaintiffs' counsel in *Mays v. Dart*. On May 7,  I spoke with Thomas Budasz, a detainee in the Cook County Jail, who provided me with the following information:

1. Mr. Budasz is 39 years old. He is housed in Division 8, tier 3H.

2. Mr. Budasz is being detained on a $110,000-D bond that he cannot afford to pay.

3. Mr. Budasz recently had heart surgery, and had tested positive for COVID-19.

4. Social distancing is impossible because there are just too many people on the deck.

5. At least one person has died while inside Mr. Budasz's deck. That person was removed from the cell and the bedding was cleaned, but otherwise the cell and/or surrounding areas were not sanitized.

6. Mr. Budasz has filed several grievances about conditions inside the jail, and has encouraged others to do the same. However, he does not believe these grievances are being taken seriously or properly processed.


I declare under penalty of perjury that the foregoing is true and correct.


May 7, 2020                                  /s/Charlie McKeown
Chicago, IL                                  Charlie McKeown

**Affidavit of Elizabeth Corrado for Malik Gross**

My name is Elizabeth Corrado. I am a volunteer investigator at the Chicago Community Bond Fund, assisting Plaintiffs' counsel in *Mays v. Dart*. On May 7, I spoke with Malik Gross, a detainee in Cook County Jail, who provided me with the following information:

1. Mr. Gross is 22 years old. He currently resides in Division 2 (DIV2-D2-O-4) of Cook County Jail. Mr. Gross has a $10,000 electronic monitoring bond. He has been in Cook County Jail since March, 29, 2020.

2. On April 30, 2020, Mr. Gross posted $1,000 for his release onto electronic monitoring. Mr. Gross could not be released because the Sheriff has run out of monitoring bands.

3. Mr. Gross is housed in an open dormitory with thirty other people. The dorm is currently on quarantine, but Mr. Gross cannot social distance because the bunk beds are only two feet away from each other. Mr. Gross sleeps on a lower bunk and is only two feet away from his top bunk bedmate and those that sleep directly to his right and left.

4. Out of the six showers, only three work. The sink is broken and overflowing. There are three urinals, and only one of the three toilets work. Thirty people must share three showers, three urinals, and one toilet.

5. Social distancing is not possible on the deck because it is over capacity. There are three tables that fit only ten to fifteen people. There are thirty people on Mr. Gross's deck, and so the common area is always over crowded. There is no distancing by the phones. The single, shared microwave is not cleaned between uses.

6. Mr. Gross is not supplied with proper cleaning materials. He receives one bar of soap every three days. He has no access to hand sanitizer.

7. The common areas do not get regularly cleaned. All of the dormmates pitch in to clean the areas but it is not enough. Mr. Gross and his dormmates are forced to rip up their towels to fashion face towels and cleaning rags. The dormmates have no bleach or disinfectant to clean the common areas, so they are forced to use their personal bars of hand soap to wipe down tables and phones.

8. Not all COs wear masks and gloves. Mr. Gross and his dormmates receive masks only once a week and they never receive gloves. The COs do nightly shakedowns of everyone's personal belongings.

I am providing this hearsay declaration because of restrictions on visitors and contact with detainees in the Cook County Jail. I declare under penalty of perjury that the foregoing is true and correct.

May 9, 2020                          /s/ Elizabeth Corrado
Chicago, Illinois                    Elizabeth Corrado

**Affidavit of Charlie McKeown for Darrion Hawkins**

My name is Charlie McKeown. I am a Volunteer Investigator at the Chicago Community Bond Fund, assisting Plaintiffs' counsel in *Mays v. Dart*. On May 8, I spoke to Darrion Hawkins, a detainee in the Cook County Jail, who provided me the following information.

1. Mr. Hawkins is 21 years old. He is residing in Division 2 (DIV2-D2-O-28) of the Cook County Jail. He is incarcerated with a bond of $100,000. He was booked on December 6, 2019.

2. Mr. Hawkins has been in Division 2, Dorm 2, "O House" for one week. He is housed with 17-18 other people. They are not currently quarantined.

3. There is mold in the bathrooms and the bathroom ceiling is collapsing from mold and rot.

4. Social distancing is not possible where Mr. Hawkins lives. At the time of his interview, there people within one foot of him using the phones. The beds are only a foot or so from one another.

5. Social distancing is not possible where Mr. Hawkins eats, in the bathroom, or in common areas.

6. Mr. Hawkins receives soap but is not distributed daily. He stated he does not receive enough soap. He does not have access to hand sanitizer.

7. The people housed in the dorm are responsible for cleaning. Jail staff have told them they can clean the dorm whenever they want, but the jail does not distribute cleaning supplies. The cleaning solution does not smell like anything and they are usually mopping with dirty water. The same mops are used on multiple decks, and they smell bad.

8. Mr. Hawkins has been asking officers for a rag to clean with for five days and has been denied.

9. Mr. Hawkins reported that jail staff wear masks but no gloves.

10. Mr. Hawkins is unsure whether anyone in his dorm has COVID-19 symptoms but knows that no one has been tested.

11. Mr. Hawkins is in recovery from substance addiction. He has also been feeling tired and short of breath. He has a tickle in his throat. He is not sure whether these are symptoms of COVID-19 and he has not been able to see a nurse or doctor.

12. On May 7, everyone in the dorm filed grievances together. Mr. Hawkins has filed grievances in the past as well.

13. Mr. Hawkins stated that people are putting up covers "like tents" to try to keep themselves safe.

14. In the day room, people are shoulder-to-shoulder at the phones, at the TV, and waiting for the bathroom.

15. There is a man on the deck with an open wound.

16. Mr. Hawkins does not get enough to eat. He receives three pieces of bread, three pieces of meat, and a bag of chips.

17. Mr. Hawkins has been wearing the same clothes for a week and has not been able to change his sheets.

I am providing this hearsay declaration because of restrictions on visitors and contact with detainees in the Cook County Jail. I declare under penalty of perjury that the foregoing is true and correct.

May 8, 2020                             /s/ Charlie McKeown
Chicago, Illinois                       Charlie McKeown

**Affidavit of Mary Ellen Stitt on Behalf of Konrad Hudyka**

My name is Mary Ellen Stitt. I am a Volunteer Investigator at the Chicago Community Bond Fund, assisting Plaintiffs' counsel in *Mays v. Dart*. On May 7, 2020, I spoke with Konrad Hudyka, a detainee inside Cook County Jail, who provided me the following information:

1. Mr. Hudyka was to be released on electronic monitoring/home-confinement on or about April 28, 2020. Instead, because the County no longer has enough electronic monitoring equipment, Mr. Hudyka is being held inside Cook County Jail on a *de facto* no-bail hold.
2. Mr. Hudyka is housed in Division 2 – O House, as it is called.
3. It is not possible to social distance in any space within Division 2 – O House.
4. Mr. Hudyka is in a dorm with 24 beds, all of which are two to three feet apart. There is no way to social distance in the room where they eat.
5. There are six showers, six toilets, and six sinks. All are about one and one-half feet apart. It is not possible to social distance in the bathroom.
6. The guards drop off two bars of soap to Mr. Hudyka per week. The soap usually lasts him until he receives more. Mr. Hudyka must ask a guard to use hand sanitizer, but it is available upon request.
7. The same product – whether it is sanitizer or some unknown substance to Mr. Hudyka – is also available if he or other detainees wish to attempt to clean their living spaces. They can request mops, brooms, and this particular sanitizing product from the guards. Guards do not clean any of the jail area.
8. Mr. Hudyka receives a mask before he wakes every morning. The detainees in his unit/division are wearing masks.
9. There are no gloves for detainees. The guards wear masks and gloves.
10. Mr. Hudyka is concerned about the spread of COVID-19 while people are asymptomatic. Most bothersome is where he eats with the other detainees. It is not possible to social distance and their masks are off the entire time to eat.

I am providing this hearsay declaration because of restrictions on visitors and contact with detainees in the Cook County Jail. I declare under penalty of perjury that the foregoing is true and correct.

May 10, 2020                                                          /s/Mary Ellen Stitt
Chicago, IL                                                          Mary Ellen Stitt

**Affidavit of Rebecca Clough on behalf of Joey Jenkins**

My name is Rebecca Clough. I am a volunteer investigator at the Chicago Community Bond Fund, assisting Plaintiffs' counsel in *Mays v. Dart*. On May 11, I spoke with Joey Jenkins, a detainee in Cook County Jail, who provided me with the following information:

1. Mr. Jenkins is 35 years old. He is currently being housed in Division 2 (DIV2-D2-O-26). He was booked into Cook County Jail on March 25, 2019 and is being held on a $250,000D bond. His bond has yet to be reviewed. Mr. Jenkins was transferred from Stateville Prison on May 1, 2020 with six other people including officers and social distancing was not possible.

2. Mr. Jenkins has hypertension and asthma, that he receives two different inhalers for. Mr. Jenkins sleeps on the bottom bunk of his bed because he has mobility issues and uses a cane.

3. Mr. Jenkins has only been in Division 2 for one week, prior to that he was in Division 8. Division 2 is an open dorm setting with 20 other people.

4. Mr. Jenkins says social distancing is not possible because toilets and showers are 1 foot apart and there is no divider between them. When showering water bounces off of one person to the other, it is all open. There is black mold all over the sinks and ceiling. There are two sinks that continuously run and spill onto the floors.

5. Mr. Jenkins says social distancing is also impossible when sleeping, eating, or watching TV.. The beds are 2 feet apart, the tables are picnic style and 8 people fit on each side, and there is a 32" TV so they all get very close to be able to see it.

6. The people passing food are not wearing gloves. The phones are all very close together and not being sanitized between uses.

7. Soap is passed once a week but only lasts for one shower use. They do not have regular access to hand sanitizer like a dispenser, instead they have to ask CO's for it. They do not get cleaning supplies to clean their cells. Tier workers get a bottle of disinfectant to clean the areas but it is used sparingly because it is used to clean the bathrooms as well so nothing gets thoroughly cleaned.

8. Mr. Jenkins says the jail staff have better quality masks than what is given to them but they only wear them when entering the dorms. The masks they receive are as thin as tissue paper so they don't last very long. CO's that distribute the masks are not always wearing gloves or they'll be left on their bunk while they're asleep.

9. Mr. Jenkins says that people get removed from the dorm without explanation, sometimes in the middle of the night and they don't return.

10. Mr. Jenkins was tested for COVID-19 but never given the results. He has not experienced any symptoms but has increased feelings of depression, anxiety, and insomnia.

11. Mr. Jenkins has filed several grievances in regards to the unsafe conditions of the jail during COVID-19 and has yet to receive a response.

I am providing this hearsay declaration because of restrictions on visitors and contact with detainees in the Cook County Jail. I declare under penalty of perjury that the foregoing is true and correct.

May 11, 2020                    /s/ Rebecca Clough
Chicago, Illinois               Rebecca Clough

**Affidavit of Jason Hammond for Rashaud Johnson**

My name is Jason Hammond. I am a volunteer investigator at the Chicago Community Bond Fund, assisting Plaintiffs' counsel in *Mays v. Dart*. On May 8, I spoke to Rashaud Johnson, a detainee in the Cook County Jail, who provided me the following information.

1. Mr. Johnson is 25 years old. He is residing in Division 2 (DIV2-D2-O-28) of the Cook County Jail. He is incarcerated with a no bond order. He was booked on April 28, 2020.

2. After he was booked, Mr. Johnson was taken straight to Division 2, in a dorm setting that appeared to be for people who had just been detained.

3. Mr. Johnson has asthma and sickle cell anemia. He needs an asthma pump and has not been able to see a doctor to secure one.

4. For the last ten days since he was booked, Mr. Johnson has been in Division 2, Dorm 2, "O House" with about 17 other people.

5. Mr. Johnson's dorm is not on quarantine, but new people have been arriving from lockup at police stations.

6. Mr. Johnson sleeps on the lower bunk. The bunks on either side of him are about one foot away.

7. In the bathroom, there are three working showers, three working toilets, and four working sinks. There is mold in the bathroom and the ceiling is coming apart.

8. Social distancing is not possible during meals. There are three tables and people eat about one or two feet away from each other.

9. Social distancing is not possible in the bathrooms or other common areas.

10. Mr. Johnson has received soap from jail staff.

11. The jail has not given Mr. Johnson his own bottle of sanitizer, but he stated that sometimes an officer will let him use their hand sanitizer.

12. The common areas are cleaned by two tier-workers once a night, but there is only so much they can do. They are not able to clean the areas around the beds.

13. Mr. Johnson has received a mask every other day, but no gloves.

14. Mr. Johnson and everyone in his dorm has been tested for COVID-19, but they have not been informed of their results.

15. Mr. Johnson hears people waking up and coughing during the night.

16. Mr. Johnson does not currently have symptoms of COVID-19.

17. Mr. Johnson has not seen a counselor. He filled out a medical form requesting for an asthma pump. He also wishes to see a dentist because he has pain in his mouth, and also suffers from migraines.

I am providing this hearsay declaration because of restrictions on visitors and contact with detainees in the Cook County Jail. I declare under penalty of perjury that the foregoing is true and correct.

May 8, 2020                                    /s/ Jason Hammond,
Chicago, Illinois                              Jason Hammond

**Affidavit of Jason Hammond for Jerome Lawrence**

My name is Jason Hammond. I am a Volunteer Investigator at the Chicago Community Bond Fund, assisting Plaintiffs' counsel in *Mays v. Dart*. On May 11, 2020, I spoke to Jerome Lawrence, a detainee in the Cook County Jail, who provided me the following information.

1.  Mr. Lawrence is 51 years old. He is currently residing in Division 10 (DIV10-4A-4124-1) of the Cook County Jail. He is incarcerated on a no bail, meaning he does not have a monetary bond he could post to get free. He has been in the Jail since September 13, 2015.

2.  Mr. Lawrence is currently in a deck that is on quarantine.

3.  The bathrooms in Mr. Lawrence's deck are not safe. There is one urinal, two toilets, one sink, and two working showers. All of these are within 6 feet of each other and are often being used at the same time.

4.  Each day, Mr. Lawrence is allowed four hours out of his cell into the common area. While in the common area, social distancing is impossible. Many inmates walk freely near each other. The Sheriff's Officers do not attempt to enforce rules requiring six feet of space. While out of the cells, the inmates eat at tables sitting within just a few feet of each other.

5.  Certain inmates are designated to clean the common areas, but they do not receive enough time nor proper equipment to adequately clean all the surfaces.

6.  Mr. Lawrence has filed numerous grievances but rarely if ever hears back. He has complained about the unsanitary conditions at the jail, including the lack of ventilation, bad smell, the presence of rats and cockroaches, and the impossibility of social distancing.

I am providing this hearsay declaration because of restrictions on visitors and contact with detainees in the Cook County Jail. I declare under penalty of perjury that the foregoing is true and correct.

May 12, 2020 /s/ Jason Hammond
Chicago, Illinois Jason Hammond

**Affidavit of Brendan Mohr for Nelson Pacheco**

My name is Brendan Mohr. I am a Volunteer Investigator at the Chicago Community Bond Fund, assisting Plaintiffs' counsel in *Mays v. Dart*. On May 7, I spoke to Nelson Pacheco, a detainee in the Cook County Jail, who provided me the following information:

1. Mr. Pacheco is 44 years old. He is residing in Division 2 (DIV2-D4-OL-23) of the Cook County Jail. He is incarcerated with no bond and his bond has never been reviewed. He was booked on January 24, 2020.

2. Mr. Pacheco has been in Division 2 for three months. The building he currently resides in is dirty and was empty for about two and a half years.

3. Mr. Pacheco's deck is not on quarantine. A couple of sanitation workers tested positive for COVID-19 and the deck went on quarantine for about a month. During quarantine, the jail continued to add new people to the deck.

4. Mr. Pacheco's deck houses 89 people currently.

5. Mr. Pacheco sleeps on the lower bunk, and the upper bunk is unoccupied. The bunks on either side of him are less than three feet away.

6. There is one bathroom for the deck and all the toilets are functional. There are four shower stalls, two of which are broken. The other shower heads do not work well. There is hot water.

7. Mr. Pacheco is the janitor for the deck. He cleans the bathroom every night and is paid a dollar a day.

8. Jail staff have asked Mr. Pacheco and the people on his deck to save and recycle their gloves.

9. Mr. Pacheco stated he is not receiving proper personal protective equipment ("PPE"). Officers are not consistently distributing PPE. Mr. Pacheco stated some officers do not want to be bothered and others are overworked and starting to underperform.

10. Mr. Pacheco cannot socially distance while eating. Everyone crowds into the benches at the same time.

11. Social distancing is "not even remotely possible" on Mr. Pacheco's deck.

12. Mr. Pacheco receives tiny bars of soap every other day.

13. There is a bottle of hand sanitizer on the deck, filled with a quarter hand sanitizer and the remainder with bleach and water.

14. Mr. Pacheco stated that the jail staff have masks, but they do not all wear them. He has witnessed officers playing cards with detainees without wearing masks.

15. Mr. Pacheco has seen three people get sick with COVID-19: Earl Frye, Trent Adams, and Joe Buckhead. Those individuals left the deck and Mr. Pacheco has not seen them since. He assumes they were positive because the deck went on quarantine immediately after they left.

16. Mr. Pacheco has not been tested for COVID-19 and has not observed anyone else being tested.

17. Mr. Pacheco believes he has been exposed to COVID-19 but has not had symptoms. He has a sore throat that he attributes to low air quality.

18. Mr. Pacheco has not filed grievances because it is up to jail staff to bring the grievance slips. He stated it can be hard to get the officers to do things.


I am providing this hearsay declaration because of restrictions on visitors and contact with detainees in the Cook County Jail. I declare under penalty of perjury that the foregoing is true and correct.

May 7, 2020                                    /s/ Brendan Mohr
Chicago, Illinois                              Brendan Mohr

**Affidavit of Darryl Li for Kevin Walker**

My name is Darryl Li. I am a Volunteer Investigator at the Chicago Community Bond Fund, assisting Plaintiffs' counsel in *Mays v. Dart*. On May 7, I spoke with Kevin Walker, a detainee in Cook County Jail, who provided me the following information:

1. Mr. Walker is 38 years old. He is residing in Division 2 (DIV2-D2-O-22) of Cook County Jail. He is incarcerated with a bond of $150,000. He was booked on February 20, 2020. His bond was reviewed on April 16, 2020.

2. Mr. Walker left Stateville Correctional Center on April 28. At Stateville, he was told he was going home, but was taken to Cook County Jail. He rode in a van with three inmates and two officers; social distancing was impossible in the van.

3. Mr. Walker is living with 17 other people in Division 2, dorm 2. They all sleep on the lower bunks, but the bunkbeds are three feet apart from each other.

4. The dorm has six toilets and three working sinks. There is a mop sink covered in mold. Only two of six showers are functional. There is one common drinking fountain. The fluorescent lights in the bathroom are falling off, which has been noted by building inspectors. The building has been condemned.

5. Mr. Walker eats at tables in the dorm where social distancing is impossible; all the people in the dorm receive their trays at the same time.

6. To socially distance in the showers, the people in the dorm decided to shower one at a time. The jail does not enforce this.

7. Social distancing is not possible in the common areas. The phones are spaced right next to each other. And the TV is small, requiring everyone to sit closely in order to see it. Mr. Walker and others in the dorm have asked staff to crack open the window in the common room, but they have not.

8. Mr. Walker receives two small bars of soap per week and states it is not enough to remain sanitary.

9. Mr. Walker does not have access to hand sanitizer. The nursing staff have a bottle, and when they come by you can ask them for a squirt of hand sanitizer.

10. Mr. Walker and another individual are the dorm workers responsible for cleaning. Mr. Walker's cleaning partner has a colostomy bag. The jail provides one spray bottle for cleaning the whole dorm if Mr. Walker asks for it. He tore about a personal towel to make rags for cleaning. This was Mr. Walker's own idea because the jail did not provide rags, paper towels, etc.

11. Mr. Walker states that the one spray bottle provided for cleaning is not enough for the phones, the tables, the TV, the water fountain, and everything that should be wiped down.

12. Mr. Walker does not receive compensation or benefits of any kind for cleaning the dorm.

13. They share brooms and mops with other decks, some of which may be under quarantine.

14. Mr. Walker has received masks from the jail but no gloves.

15. Mr. Walker observes the staff wearing masks, but few wear gloves. Staff bring trays of food without gloves. And the staff does not require Mr. Walker to wear gloves when passing out trays of food.

16. Mr. Walker has not experienced any symptoms of COVID-19. An officer informed Mr. Walker that he had recently recovered from COVID-19. The officer was not wearing a mask. Mr. Walker does not recall the officer's name.

17. Mr. Walker tried to file a grievance on May 6, but was told the jail was out of grievance forms.

I am providing this hearsay declaration because of restrictions on visitors and contact with detainees in the Cook County Jail. I declare under penalty of perjury that the foregoing is true and correct.

May 7, 2020                                      /s/ Darryl Li
Chicago, Illinois                                Darryl Li

**Affidavit of Darryl Li for Antonio White**

My Name is Darryl Li. I am a volunteer investigator at the Chicago Community Bond Fund, assisting Plaintiffs' counsel in *Mays v. Dart*. On May 1, I spoke with Antonio White, a detainee in Cook County Jail, who provided me the following information:

1. Mr. White is 27 years old. He currently resides in Division 5 (DIV5-1E-16-1) of Cook County Jail. He entered the Jail on April 3, 2020. Mr. White was originally given a $3,000 bond. This was supposed to have changed to $1,000 on May 4, 2020.

2. Mr. White has been diagnosed with HIV. He has not had medication for over a year. He cannot get access to his levels because the staff will not draw his blood for testing due to COVID-19. Mr. White also suffers from asthma.

3. Mr. White was moved, along with his whole dorm from Division 2, dorm 3 JJ, after they all filed grievances about the water. They entered Division 5 on May 1.

4. Mr. White is alone in his cell, but the unit is not quarantined. There were 20 people in the day room, during this interview. Mr. White does not have hot water in his cell. His cell has mold, rust, and the toilet floods.

5. He does not have access to soap. The staff asked the inmates on April 4 if they could afford soap and told them to fill out a request for a care package if they could not afford it. Mr. White requests soap every day. He does not have access to hand sanitizer. They are given only a watered-down substance to clean with—no bleach or other cleaning chemicals are provided. When he first arrived, he had to clean his own cell on his hands and knees because it was completely dirty, and the mop head was so dirty, it was unusable.

6. He was given a mask a couple times, but no gloves. The staff wear masks when interacting with inmates, otherwise they do not wear them.

7. Mr. White was experiencing a very raspy voice and shortness of breath. His inhaler was not helping him. He was having hot flashes. These symptoms started when he was in Division 3 and someone else on his deck had symptoms. During this time (the whole month of April), 3 or 4 inmates had symptoms and were taken out. Mr. White was not given any information on whether they tested positive.

8. Mr. White has continually asked for testing, but his requests have been refused.

9. Mr. White, along with others, filed a grievance on April 17 about being too close together with other inmates, not having sanitizer, masks, gloves, or hot water. On April 26, Mr. White filed another grievance about not receiving proper equipment for cleaning or any information on how to properly clean. He had not heard back about either grievance.

I am providing this hearsay declaration because of restrictions on visitors and contact with detainees in the Cook County Jail. I declared under penalty of perjury that the foregoing is true and correct.

May 10, 2020                                                                /s/ Darryl Li
Chicago, Illinois                                                          Darryl Li


### Affidavit of Sara Rosenburg for Antonio White

My Name is Sara Rosenburg. I am a volunteer investigator at the Chicago Community Bond Fund, assisting Plaintiffs' counsel in *Mays v. Dart*. On May 7, I spoke with Antonio White, a detainee in Cook County Jail, who provided me the following information:

1. Parts of Division 5 have been condemned because staff have not fixed the water pressure. They have only fixed the hot water. Some inmates have been drinking water from the shower because the water fountain in the day room is broken. During the day, Mr. White would have to ask someone else to pass him a cup of water from their cell.

2. Mr. White ended up having to buy soap from commissary because he had not received any soap in over a week.

3. Staff have been handing out masks with their bare hands, so Mr. White has refused to accept or wear the masks.

4. Someone on his tier is awaiting test results and has not been quarantined while waiting.

5. Mr. White has continually asked for a test because of his sore throat, raspy voice, and fluctuating temperature. He has been refused a test and told by staff that he would have to talk to a doctor because they do not want to "waste tests."

6. He was told to sign a consent form if he wanted to be tested for COVID-19 but refused unless he could see a doctor. Staff are not allowing anyone to see the doctor.

7. Mr. White filed an additional grievance on May 6, 2020. He received a response to one of his grievances on May 7, 2020, although he is unsure to which grievance the response corresponds. The response states that the jail is supplying more cleaning supplies and working on social distancing.

8. Mr. White was planning to file another grievance about lack of access to the doctor, dentist, or adequate medication.

9. Mr. White does not know if any of his medication is working properly and he is concerned that he could faint or die any day because of this.

I am providing this hearsay declaration because of restrictions on visitors and contact with detainees in the Cook County Jail. I declared under penalty of perjury that the foregoing is true and correct.

May 10, 2020                                          /s/ Sara Rosenburg
Chicago, Illinois                                    Sara Rosenburg

**Affidavit of Mary Ellen Stitt on Behalf of Melvin Wolfe**

My name is Mary Ellen Stitt. I am a Volunteer Investigator at the Chicago Community Bond
Fund, assisting Plaintiffs' counsel in *Mays v. Dart*. On May 7, I spoke with Melvin Wolfe, a
detainee in Cook County Jail, who provided me the following information:

1. On April 27, 2020, Mr. Wolfe's bond was reviewed – previously a "no bond" hold - and
   modified to home confinement/electronic monitoring. Mr. Wolfe, upon information and
   belief as of the drafting of this affidavit, has not been released from the Cook County Jail.
2. Mr. Wolfe is housed in a dormitory in Division 2 with roughly 20 to 25 people other
   detainees.
3. Mr. Wolfe's bunk is no more than three feet on either side from another detainee.
4. The detainees share three showers and three toilets. Two of the showers and one of the
   sinks do not drain and detainees try to clear them of clogs but the dirt/grime/unsanitary
   conditions of the facilities is overwhelming. Bugs and gnats are common in the bathroom.
   Tiles are peeling from walls and ceilings and half of the lights do not function.
5. The detainees share one water fountain and they share three phones. The fountain and
   phones are not sanitized or even wiped down after use. Some detainees use their own
   towels, attempting to clean common surfaces, but are not given cleaning supplies.
6. Mr. Wolfe and the other detainees share three tables when eating. They sit somewhere
   between three and five feet apart.
7. There is mold on nearly every surface – the walls, ceilings, and floors. Mr. Wolfe, asthmatic
   since childhood, has difficulty breathing and noticed other detainees develop respiratory
   issues as well in Division 2.
8. Mr. Wolfe says that detainees are given a mop and water to clean their cells and the
   bathroom, but no chemicals/cleansers whatsoever. Jail staff has not been regularly cleaning
   or "spraying down" the dormitory at all.
9. Mr. Wolfe receives a one-inch think soap once weekly. That may last two to three days.
   Anything more must be purchased at the commissary. There is no access to hand sanitizer.
10. Detainees receive a mask two to three times per week, so they are re-used often. Guards
    are not regularly wearing masks or gloves; food is distributed without the use of PPE.
11. Mr. Wolfe's cellmate where he was initially housed in Division 8 passed away after testing
    positive for COVID-19.
12. The area was not subsequently cleaned. Jail staff put an "X" over those areas where
    detainees should sit or stand, but there was no enforcement of distancing and it was not
    possible anyway. One night, the floor was "sprayed down."
13. All 20 detainees in that particular dormitory were put in "quarantine." They had more
    space, but there was no distancing in the bathrooms, in the common areas, or at the phones.
14. Mr. Wolfe experienced flu-like symptoms that became severe. His requests to see medical
    personnel were ignored over the course of three full weeks while in "quarantine."
15. Mr. Wolfe was tested and he came back positive for COVID-19.

16. In his current dorm, several detainees are experiencing and displaying COVID-19 symptoms, including respiratory difficulty, loss of sense of smell and taste, coughing, and headaches.

17. Those with symptoms are not being tested for COVID-19 and are not receiving medical attention.

18. Mr. Wolfe filed three grievances.

I am providing this hearsay declaration because of restrictions on visitors and contact with detainees in the Cook County Jail. I declare under penalty of perjury that the foregoing is true and correct.

May 10, 2020                                                    /s/Mary Ellen Stitt
Chicago, IL                                                      Mary Ellen Stitt