IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTHONY MAYS, individually and on behalf of a class of similarly situated persons; and JUDIA JACKSON, as next friend of KENNETH FOSTER, individually and on behalf of a class of similarly situated persons,<br><br>　　　　Plaintiffs-Petitioners,<br><br>　　vs.<br><br>THOMAS DART,<br><br>　　　　Defendant-Respondent. | Case No. 20 C 2134 |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge, as emergency judge:

On April 27, 2020, the Court granted in part the plaintiffs' motion for a preliminary injunction in this class action lawsuit regarding conditions at the Cook County Jail, ordering some of the relief sought by the plaintiffs but denying a number of their requests. *See Mays v. Dart*, No. 20 C 2134, 2020 WL 1987007 (N.D. Ill. Apr. 27, 2020) ("*Mays 2*"). The preliminary injunction tracked a temporary restraining order entered about three weeks earlier but included one additional requirement. *See Mays v. Dart*, No. 20 C 2134, 2020 WL 1812381 (N.D. Ill. Apr. 9, 2020) ("*Mays 1*").

The preliminary injunction also directed the Sheriff of Cook County—the defendant in the case—to submit a report regarding compliance. The Sheriff did this on May 1, 2020. On May 6, 2020, the plaintiffs filed a response to the Sheriff's report in which they sought expedited discovery, contending they needed this to determine

compliance with the preliminary injunction. On May 11, the Sheriff objected and moved to strike the request for expedited discovery. Also on May 11, the Sheriff filed a notice of appeal from the preliminary injunction. Eight days after that, on May 19—a little over three weeks after entry of the preliminary injunction—the Sheriff moved for a stay pending appeal and repeated his request to strike the plaintiffs' proposed expedited discovery requests. At the request of the judge assigned to the case, the undersigned judge, acting as emergency judge, directed the plaintiffs to respond to the stay motion the next day and heard argument on the Sheriff's stay motion as well as the plaintiffs' expedited discovery request on May 21, 2020.

For the reasons stated below, the Court denies the Sheriff's motion to stay the preliminary injunction pending appeal and also denies the plaintiffs' request for expedited discovery.

## Discussion

Familiarity with the Court's temporary restraining order and preliminary injunction decisions is assumed. The plaintiffs in this case contend that the Sheriff is violating the Fourteenth Amendment due process rights of persons detained at the Jail by failing to provide them with reasonably safe living conditions in the face of the coronavirus pandemic. In their motion for a preliminary injunction (as in their TRO motion), the plaintiffs sought wide-ranging relief. This included mandatory social distancing of detained persons throughout the Jail—relief that would amount to universal single-celling and then some; transfer of detained persons to electronic home monitoring; and convening a three-judge court under the Prison Litigation Reform Act to consider the release of detained persons. The plaintiffs also sought measures to identify and

2

separate medically vulnerable detained persons and to require coronavirus testing, cleaning of Jail facilities, and provision of personal protective equipment.

After extensive briefing and hearings, the Court granted the plaintiffs' motions, but only in part. The Court entered a TRO including certain requirements on April 9 and a preliminary injunction with those same requirements plus one more on April 27. On both occasions, however, the Court overruled the plaintiffs' requests for sweeping remedies, declining their requests to release detainees with medical vulnerabilities, mandate full "social distancing" throughout the jail, and convene a three-judge court to prisoner releases.

The Sheriff has moved to stay the preliminary injunction pending appeal, and plaintiffs have moved for expedited discovery to assess the Sheriff's compliance with the injunction. The Court addresses each request in turn.

**1.    Stay pending appeal**

In deciding whether to stay an order pending appeal, a court considers whether the movant "has made a strong showing that he is likely to succeed on the merits"; whether the movant will be irreparably injured absent a stay; whether a stay "will substantially injure the other parties interested in the proceeding"; and "where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).

    **a.    Movant's likelihood of success**

The Sheriff has not made a "strong showing" of likelihood of success. The record before the Court when it issued the preliminary injunction reflected that the people detained at the Jail faced a real and persistent danger to their health. As of April 9, when the Court issued a temporary restraining order that embodied most of the relief

3

extended via the preliminary injunction, the Jail had the largest single concentration of confirmed coronavirus infections in the entire country. *See Mays 1*, 2020 WL 1812381, at *2. At the time of the preliminary injunction, although the number of positive-tested detained persons in isolation had declined, the overall positive test numbers were continuing to increase (350 on April 17 vs. 289 on April 10), indicating that the virus was continuing to spread within the Jail. *See* Def.'s Resp. to Pls.' Mot. for Prelim. Inj. at 2-3. Before the issuance of the TRO and the preliminary injunction, the Sheriff had, undeniably, taken steps to attempt to stem the spread of the virus. But the Constitution does not say that so long as a jailer does *something*, he complies with constitutional obligations. Rather, if jailer does not take objectively reasonable steps to protect detained persons from a known and serious risk, he violates the Fourteenth Amendment. The Court concluded that plaintiffs had established a reasonable likelihood of showing the objective unreasonableness of some of the Sheriff's actions or inaction.

In seeking a stay of the preliminary injunction, the Sheriff contends that he has consistently acted in good faith, and the Court does not dispute this. But the Sheriff's intent was not and is not the issue. The law in this Circuit is clear that conditions of confinement cases involving pretrial detainees are judged by a standard of objective reasonableness, not by assessing whether the Sheriff had good or bad intentions. *See, e.g., Hardeman v. Curran*, 933 F.3d 816, 823-24 (7th Cir. 2019). The Court notes that in this regard, this case is nothing like two cases cited by the Sheriff in his motion to stay, in which appellate courts granted stays of coronavirus-related preliminary injunctions. *See Swain v. Junior*, 958 F.3d 1051 (11th Cir. 2020); *Valentine v. Collier*,

956 F.3d 797 (11th Cir. 2020). The courts in those cases found a significant likelihood of success on the part of the jailer largely due to the absence of evidence that the jailer exhibited the intent required by those Circuits, specifically, deliberate indifference. That is not the standard that applies in this Circuit or in this case. The Sheriff may not have exhibited deliberate indifference, but that is not the same as saying that his actions or inaction were objectively reasonable.

The Sheriff also contends that his approach has worked, citing decreases in the incidence of new coronavirus cases at the Jail over the last several weeks. There are at least two problems with this argument. First, it amounts to 20/20 hindsight. The Court ruled, and had to rule, based on the record as it was presented at the time, not based on how things turned out several weeks later. Second, the TRO and preliminary injunction directed the Sheriff to take steps he was not already taking or was not taking in an effective way. In particular, the Court's orders directed the Sheriff to do the following:

- cease the use of crowded "bullpens" holding multiple detained persons at intake;
- (on the preliminary injunction) enforce social distancing in most of the Jail;
- obtain and distribute facemasks to persons exposed to infected or quarantined detainees;
- establish a Sheriff's Office policy to implement prompt testing for detained persons exhibiting symptoms of coronavirus disease;
- enable actual, not just theoretical, access to adequate sanitation supplies; and
- actually enforce cleaning and sanitation requirements in areas of the Jail accessed in common, such as showers, bathrooms, and day rooms.

5

The Sheriff's argument about positive results does not account for the very real possibility that the measures ordered by the Court at the TRO and preliminary injunction stage contributed to those results.

On the merits, the Sheriff's primary argument appears to be that guidelines for prison and jail administrators issued by the Centers for Disease Control are determinative of the question of objective reasonableness and that he has consistently complied with them. This contention likewise has at least two flaws. First, the Sheriff has cited no authority establishing that an externally-created set of guidelines like these amounts to a constitutional measuring stick. Rather, the law in this Circuit is that such guidelines are relevant in determining objective reasonableness, but not determinative. *See, e.g., United States v. Brown*, 871 F.3d 532, 538 (7th Cir. 2017); *Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 1996). In the respect most pertinent to this case, the CDC guidelines set a feasibility or practicality limitation that, the Court concluded, could not be determinative of the constitutional question presented by plaintiffs' claims. Second, and perhaps just as importantly, the record established that the Jail had not yet reached feasibility limitations regarding the spacing of detained persons: the Jail's executive director so testified at the preliminary injunction hearing, indicating that the Jail had additional space that could be used to further spread out detainees. Thus the record reflected that the Sheriff's practices in this particular respect *did not* measure up to the CDC guidelines.

Next, contrary to the Sheriff's contention, the Court did not fail to give appropriate deference to the Sheriff's expertise or his interest in appropriate management of the Jail. To the contrary, the Court did exactly what the law requires. *See Mays 2*, 2020

WL 1987007, at *27 (citing *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2073 (2015); *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)). Indeed, the Court rejected, both at the TRO and preliminary injunction stages, much—in fact most—of the relief sought by plaintiffs. Specifically, the Court declined to:

- order the Sheriff to identify and triage detained persons believed to be medically vulnerable;
- relocate vulnerable detainees to custodial (and perhaps non-custodial) locations other than the Jail;
- mandate full social distancing throughout the Jail;
- distribute personal protective equipment to every detained person;
- institute a robust program of coronavirus testing of all detainees throughout the Jail; and
- convene a three-judge court to consider releasing detained persons from the Jail.

On each of these points, the Court either found that plaintiffs were unlikely to be able to show the Sheriff's actions were objectively unreasonable, or deferred to the Sheriff's expertise and discretion, or both.

One certainly understand why, as a strategic matter, the Sheriff's motion for a stay omits any reference to what the Court *did not* order. But a look at the full picture confirms that the Court followed a careful and restrained approach, honoring both the constitutional entitlement of detained persons to reasonable measures to protect their physical health and the Sheriff's legitimate interest in maintaining security, preserving order, and making discretionary determinations regarding allocation of resources. The law is clear that a court must consider both. The Supreme Court has stated that

7

although courts must be "sensitive to . . . the need for deference to experienced and expert prison administrators," they "nevertheless must not shrink from their obligation to "enforce the constitutional rights of all persons, including prisoners. Courts may not allow constitutional violations to continue simply because a remedy would involve intrusion into the realm of prison administration." *Brown v. Plata*, 563 U.S. 492, 511 (2011) (internal quotation marks and citation omitted).

In sum, the Court concludes that the Sheriff has not shown, let along "strongly" shown, that he is likely to succeed on appeal.

### b. Irreparable injury to movant

The Sheriff's argument regarding irreparable injury likewise falls short. In fact, the Sheriff's position on this point is internally inconsistent. One the one hand, he contends that the Court has "undermine[d]" his "thoughtful and reasonable" approach to the coronavirus pandemic as it affects the Jail. Def.'s Mot. to Stay at 13. On the other hand, he contends that the Court has essentially ordered him to do what he was already doing, *id.* at 12, thereby inserting itself as an unnecessary watchdog. Both cannot be true at the same time. The fact is that the Court has done neither. The Court observes, though, that it is difficult to see how the Sheriff will experience "irreparable harm" if he has to comply with the injunction by doing what he says he would do anyway.

The Sheriff says that the additional burden imposed by court oversight amounts to irreparable harm. The upshot of this argument, however, is that any party appealing an injunction would *automatically* meet the irreparable harm requirement for a stay— because an injunction is, after all, an injunction. This cannot be the case. That aside, the Court has not imposed any monitoring requirements beyond the initial compliance

report, which the Sheriff filed over three weeks ago and thus which cannot possibly constitute irreparable harm. The Court declined plaintiffs' requests to appoint outside monitors and to permit inspections of the Jail's facilities.

Finally, at argument, the Sheriff's counsel seemed to suggest that the fact that the plaintiffs had served discovery requests and were thereby trying to, in effect, stick their noses into his operations and decision-making amounts to irreparable harm. This cannot be the case either. Again, as the Sheriff's counsel conceded, a case does not end with a preliminary injunction; it is commonplace for discovery to proceed in a lawsuit even after a preliminary injunction is issued. So dealing with discovery requests cannot possibly constitute irreparable harm either. (Regardless, as discussed below, the Court is relieving the Sheriff of the burden of responding to plaintiffs' discovery requests at this time).

Last but not least on the question of irreparable harm, it is noteworthy that the Sheriff waited more than three weeks after the issuance of the preliminary injunction before moving for a stay. This cuts against the contention that the Sheriff has experienced, or will experience, much harm at all, let alone harm appropriately considered to be irreparable.[1]

---

[1] It may be that the Sheriff's real concern involves the potential for future problems should increased population at the Jail limit his ability to comply with social distancing requirements. On this, though, it is worth noting that the Court specifically invited the Sheriff to make a request to include certain at-risk detainees among those who may be appropriately detained in group housing, see Mays 2, 2020 WL 1987007, at *34, and to return to court to loosen the preliminary injunction's requirements if changed circumstances call for it, see id. at *37. The Sheriff has not taken the Court up on either invitation.

### c. Injury to parties other than movant

The next question is whether a stay will risk substantial injury to other interested parties, specifically to the plaintiff class. This is essentially the flip side of the point just addressed. The Sheriff did not voluntarily take all of the coronavirus-protective measures that he cites. Some were done pursuant to court order—either the TRO, or the preliminary injunction, or both. Staying the injunction would permit the Sheriff to lift measures and thereby again place the health of detained persons at serious risk. That risk cannot be discounted based on the Sheriff's assurances alone. Again, a number of the measures he took were instituted only after the Court's TRO or preliminary injunction. *See Mays 2*, 2020 WL 1987007, at *29. The Court finds that there is at least some risk of substantial injury to detained persons if the preliminary injunction is stayed.

### d. The public interest

On the question of the public interest, the Sheriff cites *Nken v. Holder*, 556 U.S. 418, 435 (2009), for the proposition that the Sheriff, as a public official, effectively embodies the public interest. *See* Def.'s Mot. to Stay at 19. It is not quite that simple. Here the Sheriff is charged with protecting not just the public at large, but also the detained persons placed in his custody, all or nearly all of whom have family members on the outside. Their interests are part of the public interest. And the detained persons' constitutional rights—and their health and lives—are at stake. It is anything but clear that the Sheriff can claim the public interest mantle entirely for himself.

For the reasons described, the Court concludes that the Sheriff has not met the requirements for a stay of the preliminary injunction. The Court therefore denies his motion to stay.

### 2. Plaintiffs' request for expedited discovery

As the Court indicated earlier, and as the Sheriff's counsel conceded at argument, the appeal of a preliminary injunction does not require the rest of the case to come to a halt in the district court. Put another way, a preliminary injunction is not the final resolution of a case. It follows that a party who is preliminarily enjoined is not relieved of the obligation to provide discovery in response to appropriate requests. In addition, as the Sheriff likewise conceded at argument, an appeal does not prevent the district court from enforcing a preliminary injunction. *See, e.g., Union Oil Co. of Calif. v. Leavell*, 220 F.3d 562, 565-66 (7th Cir. 2000).

Plaintiffs' discovery requests, they say, are aimed at determining compliance. This is plainly not the case for all of them; some involve matters beyond the relief the Court ordered in the injunction. But this does not make those particular requests inappropriate. They are within the realm of permissible discovery for the ongoing litigation of the case—which, again, does not end with the issuance of a preliminary injunction. The same is true of the plaintiffs' other requests; all of them appear to be within the scope of permissible discovery under Federal Rule of Civil Procedure 26(b)(1).

Defendants say that the Court should, and perhaps must, put the brakes on the plaintiffs' requested discovery because of the appeal. The question of whether and to what extent plaintiffs may engage in discovery, however, is not an emergency issue within the scope of the undersigned judge's role as emergency judge. The only aspect that is urgent is the request for *expedited* discovery; that is what the undersigned judge took on when requested by the assigned judge to handle the motions for a stay and for

11

expedited discovery.

All of that aside, the Court concludes that the expedited discovery requests have not been properly served. Under Federal Rule of Civil Procedure Rule 26(d), a party "may not seek discovery" before the parties have conferred under Rule 26(f) or unless authorized by the Rules, a stipulation, or a court order. None of this has happened in this case. In particular, at the time the discovery had been served there had been no Rule 26(f) conference.

For these reasons, the Court directs that the Sheriff need not answer plaintiffs' current discovery requests. At the conclusion of the oral argument on the present motions on May 21, the Court directed the parties to submit a proposed scheduling order to the assigned judge by June 2, 2020 and to conduct their Rule 26(f) conference before that. Plaintiffs may re-serve their discovery requests following the Rule 26(f) conference and may, if appropriate, move the assigned judge to permit expedited discovery.

## Conclusion

For the reasons stated above, the Court denies defendant's motion to stay the preliminary injunction pending appeal [dkt. no. 98] and denies plaintiffs' motion for expedited discovery [dkt. no. 85].

Date: May 29, 2020

_____
MATTHEW F. KENNELLY
United States District Judge

12