**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ANTHONY MAYS, et al., individually and on behalf of a class of similarly situated persons, | ) ) ) | |
| Plaintiffs-Petitioners, | ) ) | |
| v. | ) ) | Case No. 20 C 2134 |
| THOMAS J. DART, Sheriff of Cook County, | ) ) ) | The Hon. Robert W. Gettleman |
| Defendant-Respondent. | ) ) | The Hon. David M. Weisman Magistrate Judge |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION
FOR EXTENSION OF TIME TO FILE RESPONSE/REPLY BRIEFS**

The Sheriff's response to Plaintiffs' motion to extend time carries forward his strategy for the defense of this case: put forward a rosy picture of the state of coronavirus within the Jail and resist every attempt to subject that picture to scrutiny. For there to be a fair resolution of the pending motions and this case, however, scrutiny and adversarial testing of the Sheriff's assertions is essential. Reasonable discovery is a necessary feature of that process. Plaintiffs must be afforded the opportunity to pursue the discovery specified in their motion.

### I.    PLAINTIFFS' REQUEST FOR DISCOVERY IS PROCEDURALLY PROPER.

Plaintiff has filed a motion to modify a preliminary injunction that has been in effect since April 2020. The Sheriff has filed a motion to dissolve that preliminary injunction and, simultaneously, a brief opposing Plaintiffs' motion. Both of the Sheriff's pleadings are based on the identical set of evidentiary materials and the same arguments. *Compare* ECF No. 219 (and attachments) *with* ECF No. 222 (and attachments). Plaintiffs merely seek discovery to test the

1

"evidence" on which the Sheriff's filings rely. Contrary to the Sheriff's arguments, that is not a "procedurally improper" request. It is based on bedrock law governing the adversarial process.

Plaintiffs' motion cites numerous cases holding that a plaintiff must be given the opportunity for discovery to oppose a motion, like the one the Sheriff has filed here, that seeks to terminate an injunction. Indeed, the clear implication of Plaintiffs' cited line of authority is that it would be an abuse of discretion for this Court to terminate the existing injunction without having first afforded Plaintiffs a reasonable opportunity for discovery to oppose the motion. *See, e.g., Benjamin v. Horn,* 353 F. App'x 473, 475 (2d Cir. 2009) (reversing the district court's termination order); *and see* cases cited in Plaintiffs' Motion at ¶ 17. Such discovery typically *follows* the filing of a motion to terminate. *See* cases cited in Plaintiffs' Motion at ¶ 18. The Sheriff's brief cites no authority to the contrary. The Sheriff makes no effort to distinguish Plaintiffs' cases. The law is clear.

The Sheriff repeatedly criticizes Plaintiffs for their supposed "strategic miscalculation" (*e.g.,* Sheriff's Response, ECF No. 229, at 5) in filing their motion to modify the preliminary injunction before receiving Cermak Health Service's response to Plaintiffs' document subpoena. To be clear, there was no miscalculation. Plaintiffs' motion to modify the preliminary injunction noted that the Sheriff lacks a current policy for surveillance of detainees for coronavirus. *See* ECF No. 201-1 at 12. The Cermak subpoena response confirms the absence of any written surveillance testing policy. Plaintiffs' motion noted that the Sheriff does not have a policy whereby high-risk detainees are identified and afforded extra precautions against infection with the virus. *See id.* at 12–13. The Cermak subpoena response and the Sheriff's filings confirm the accuracy of that point. Plaintiffs' motion criticized the management of quarantine and isolation tiers within the Jail. *See id.* at 17. The Cermak subpoena response confirms the absence of a

2

clear, written policy regarding such management. Indeed, the Cermak subpoena response demonstrates that, while Cermak does have a written policy governing the medical response to outbreaks of other infectious diseases in the Jail (MRSA and the flu, among others), it has no such policy with respect to COVID.

These disputed questions of fact, and others, will be resolved at an evidentiary hearing. Whatever the Court's decision, it is abundantly clear that the premise of the Sheriff's argument is false. It is common practice that the filing of a motion for preliminary injunction (or to modify an injunction) will entail an opportunity for discovery prior to a hearing on the motion. The Sheriff has cited no authority, and Plaintiffs know of none, for the argument that Plaintiffs are somehow bound by the evidentiary record that existed when they filed their motion or that the Court must base its decision on that record alone.

The Sheriff's filing itself is proof to the contrary. After Plaintiffs filed their motion, *the Sheriff* sought a lengthy extension of the filing date for his response, so that he could consult with experts and review the anticipated subpoena response from Cermak Health Services. *See* Defendant's Motion for Extension of Time to File Response to Plaintiff's Motion, at ¶¶ 4–5. The Sheriff's filings have now introduced new evidence into the record of this case. As the Sheriff acknowledges, his recent, lengthy submissions include "the first . . . expert opinions on infectious disease or jail operations from the Sheriff" in this litigation. *See* Sheriff's Response at 10. It is only fair that Plaintiffs should have the same opportunity to test the factual basis of the Sheriff's submissions that the Court gave the Sheriff with respect to Plaintiffs' motion.[1] The purpose of that discovery is obvious: to help the Court and parties understand what the facts

---

[1] The Sheriff, of course, has unfettered access to the Jail and well knows the details of Jail operations. This asymmetry only underscores the importance of affording Plaintiffs the discovery necessary to test the conclusions the Sheriff's experts have reached.

3

actually are, rather than being forced to rely on untested assertions by one side in the case, particularly where that side has asymmetrical access to information. A motion for preliminary injunctive relief typically triggers an expedited discovery period, often overlapping with the filing of additional briefs, in anticipation of an evidentiary hearing that will provide the basis for the Court's decision.  There is every reason to pursue that course here.

Plaintiffs' request for discovery is not "procedurally improper."  It is fully consistent with standard practice.

## II.  PLAINTIFFS' MOTION CANNOT BE DECIDED WITHOUT AN EVIDENTIARY HEARING.

The Sheriff's opposition to Plaintiffs' request for discovery rests on the tacit proposition that his experts' opinions and assertions are self-evident truth.  That is not the case.  Neither Plaintiffs nor the Court are required to accept the following assertions (and many more like them) at face value:

- Sheriff's Position, from the declaration of Kenneth Ray (ECF No. 219-3), at ¶ 52: "The Sheriff demonstrated his preparedness for disruptions like COVID-19 through early proactive efforts, as early as January 2020, to mobilize Office resources, coordinate with Jail and criminal justice stakeholders, and consult with subject-matter experiences [sic]. From all accounts, the Sheriff is well-prepared to similarly and efficiently organize a successful response to future variants without judicial intervention or supervision."

  - Plaintiffs' Response: In fact, the Sheriff's "early . . . efforts" to respond to the pandemic were inadequate enough to warrant the entry of a preliminary injunction that was affirmed in substantial part on appeal.  *See Mays v. Dart*, 974 F.3d 810, 823–24 (7th Cir. 2020).

4

- o  And Dr. Ray provides no citation to the "accounts" he claims support his prediction that the Sheriff will respond "successfully" to future variants and that court supervision will be unwarranted.

- Sheriff's Position, from the declaration of Alysse Wurcel (ECF No. 219-2), at ¶ 27: "The COVID-19 testing procedures outlined in the Cermak's subpoena response are appropriate and follow CDC guidelines."

  - o  Plaintiffs' Response: In fact, Cermak's subpoena response reveals that it has *no* written policy regarding the testing of detainees for COVID. Its subpoena response says only that detainees may be tested under "various circumstances," only some of which are listed. There can be no assurance that Cermak employees know how and when to test detainees, given that there is no written policy governing the practice.

- Sheriff's Position, from the declaration of Alysse Wurcel, at ¶ 30: "[T]he metal bar in the KN95 mask that keeps it molded to the nose has been deemed a potential weapon by correctional experts."

  - o  Plaintiff's Response: Neither Dr. Wurcel nor Dr. Ray pause to acknowledge that N95 and equivalent masks are widely available without the metal nose piece, as a simple Google search reveals. *See* Google, "N95 masks without metal bars." And in any event, Dr. Wurcel, an infectious disease specialist, is not a correctional security expert and has no basis for making such claims about "potential weapons."

- Sheriff's Position, from the Wurcel declaration, at ¶ 33: "Cook County is appropriately maximizing social distancing to the extent possible given [the Jail's] constraints, including at intake."

  - Plaintiff's Response: There is no indication anywhere in Dr. Wurcel's declaration that she has ever been in the Cook County Jail or has any basis to know the extent to which social distancing occurs in the Jail. Dr. Wurcel in fact fails to provide any basis for her opinions generally about current conditions in the Jail. She ignores all detainee declarations, evidence from the preliminary injunction hearing, and Cermak's and the Jail's own records showing a lack of proper coronavirus policy; she appears instead to rely entirely on the Sheriff's unsubstantiated representations about the conditions on the ground in the Jail.

This list could be extended several times over. But the point is clear: there are many unsubstantiated, conclusory assertions in the Ray and Wurcel declarations that must be tested and scrutinized. It would disserve the Court and the interests of justice if these assertions, and others like them, were simply placed in the record without ever being subject to adversarial testing.

The Sheriff's response trivializes the decision this Court must make regarding whether injunctive relief against the Jail continues to be warranted and, if so, the terms of such relief. The issue is not, as the Sheriff would have it, merely whether he has done "enough" in response to the pandemic. *See* Sheriff's Response at 11. To assess whether the present preliminary injunction should remain in force and whether its terms should be modified, the Court must carefully evaluate each injunctive provision and decide if requiring that provision is objectively

reasonable under the Fourteenth Amendment, in light of the totality of circumstances within the Jail. This fact-intensive analysis, followed by the Seventh Circuit when it reviewed the preliminary injunction here (*see Mays,* 974 F.3d at 819), cannot be performed without the development of evidence. The means available to the Court to gather that evidence is the discovery process.

Nor can the Court reject Plaintiffs' position out of hand on the theory that the Sheriff has conquered the pandemic within the Jail. The initial omicron surge has subsided, as Plaintiffs' motion recognized it would. *See* ECF No. 201-1 at 6–8. Already a new variant is producing a worrisome uptick in cases nationally and in Cook County. *See* New York Times, Coronavirus Tracker (reporting a 59% increase in the 14-day average of cases nationally and in Illinois).[2] Although the Court and Plaintiffs do not yet know—the Sheriff has not yet provided *current* information as to the number of infections within the Jail—past experience suggests that there is likely a recent uptick of cases inside the Jail. The pandemic is a moving target. Plaintiffs' fundamental point is that an objectively reasonable response must necessarily include the creation and implementation of clear, written policies setting forth the actions which must be taken as the pandemic continues its course.

Plaintiffs must be given the opportunity to prove that the Sheriff's policies are either non-existent or inadequate. A hearing, preceded by reasonable discovery, is necessary to address that question.

---

[2] Available at https://www.nytimes.com/interactive/2021/us/covid-cases.html (last accessed on April 28, 2022).

### III. THIS CASE IS IN A PROPER POSTURE FOR DECISION ON PLAINTIFFS' REQUEST FOR ONGOING INJUNCTIVE RELIEF.

The Sheriff raises two final points. He contends there is no longer a proper class representative in this case, since the Sheriff believes that Mr. Foster and Mr. Mays are no longer in custody at the Jail. *See* Sheriff's Resp. at 5. And he argues that the pending motion to modify the preliminary injunction is beyond the scope of relief sought in the complaint. *Id.* Neither contention has merit.

*First,* the court provisionally certified the Plaintiff class in its April 9 order granting in part Plaintiffs' motion for a temporary restraining order. *See* ECF No. 47. The class having been certified, the mootness of the class representatives' individual claims would not affect the justiciability of those claims; they are transitory by nature, since the Jail's population is in constant flux. *See generally County of Riverside v. McLaughlin*, 500 U.S. 44 (1991); *and see Trotter v. Klincar*, 748 F.2d 1177, 1183–84 (7th Cir. 1984). Thus, even if both Mr. Foster and Mr. Mays were no longer at the Jail, the claims they asserted at the time of class certification would live on.

In any event, however, Mr. Foster *is* currently in custody in the Jail. He was booked again on July 2, 2021 and is now being housed in Division 2. *See* Cook County Jail Inmate Locater.[3] Because he is now in custody, Mr. Foster unquestionably has personal standing to prosecute the claims in the complaint on his behalf and on behalf of the class.

*Second,* the claims in the complaint are not stale. The complaint is very clear that it seeks "constitutionally sufficient procedures to protect [the class members'] health and safety that are consistent with CDC guidelines and the expert judgment of correctional health specialists."

---

[3] The Inmate Locater is available at https://inmatelocator.ccsheriff.org/InmateLocator/SearchInmates (last accessed on April 28, 2022).

Complaint, ECF No. 1, at 28. It may be that circumstances have changed in the two years since the complaint was filed. Nonetheless, the need for the relief articulated in the complaint's prayer remains. The complaint—and this case—is fully viable.

## CONCLUSION

For the foregoing reasons, and for the reasons stated in Plaintiffs' motion, this Court should enter an order extending the time for filing of Plaintiffs' reply in support of their motion to modify the preliminary injunction and the time for filing of Plaintiffs' response to the Sheriff's motion to dismiss the preliminary injunction, so as to enable Plaintiffs to pursue reasonable discovery prior to filing their submissions.

Respectfully submitted:

/s/ Locke E. Bowman
Locke E. Bowman
Attorney for Plaintiffs

Sarah Grady
Stephen H. Weil
LOEVY & LOEVY
311 N. Aberdeen Street, 3rd Fl.
Chicago, IL 60607
Tel: 312-243-5900
Fax:312-243-5902
sarah@loevy.com

Locke E. Bowman
Alexa A. Van Brunt
MacArthur Justice Center
Northwestern Pritzker School of Law
375 E. Chicago Avenue, Chicago, IL 60611
Tel: 312-503-0884

Steve Grimes
Thomas F. McAndrew
Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

Tel: (312) 558-8317

Alec Karakatsanis
Civil Rights Corps
1601 Connecticut Ave NW, Suite 800
Washington, DC 20009

<u>**CERTIFICATE OF SERVICE**</u>

  I, Locke E. Bowman, an attorney, hereby certify that on April 29, 2022, I caused a copy of the foregoing to be filed using the Court's CM/ECF system, which effected service on all counsel of record.

            /s/ Locke E. Bowman   

11